IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| EDWARD D. HEATON,<br><br>    Plaintiff,<br><br>v.<br><br>THE WEITZ COMPANY, INC.,<br><br>    Defendant. | Law No.  CV05-102 LRR<br><br>**PLAINTIFF'S RESISTANCE TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR MOTION FOR NEW TRIAL** |
|---|---|

Plaintiff, Edward D. Heaton, resists Defendant's renewed motion for judgment as a matter of law or motion for new trial and in support states:

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................ 2

II.  STANDARDS FOR A RULE 50 MOTION ................................................. 2

III. JUDGMENT AS A MATTER OF LAW IS NOT APPROPRIATE
     BECAUSE MR. HEATON ESTABLISHED A CAUSAL CONNECTION
     BETWEEN THE PROTECTED ACTIVITY AND THE ADVERSE
     EMPLOYMENT ACTIONS ........................................................................ 3

IV.  MR. HEATON MITIGATED HIS DAMAGES ........................................... 10

V.   THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE
     JURY'S EMOTIONAL DISTRESS AWARD ............................................ 12

VI.  THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE
     JURY'S PUNITIVE DAMAGE AWARD .................................................. 15

VII. CONCLUSION .......................................................................................... 18

I.  INTRODUCTION

Mr. Heaton agrees with Defendant's "statement of the case" as cited in its brief in support of the renewed motion for judgment as a matter of law or motion for new trial. Accordingly, Mr. Heaton does not restate the lengthy facts of the case.

II. STANDARDS FOR A RULE 50 MOTION

Mr. Heaton agrees with the case law cited by Defendant in its brief in support of the renewed motion for judgment as a matter of law or motion for new trial regarding the standards under which the Court must review Defendant's motions and the deference the Court must give the prevailing party (Mr. Heaton's) evidence. Additionally, the Court must not, in ruling upon a motion for judgment as a matter of law, weigh or evaluate the evidence or consider the credibility of witnesses. Rasmussen v. Quaker Chemical Corp., 993 F.Supp. 677, 681 (N.D. Iowa 1998) *citing* Stoebner v. Lingenfelter, 115 F.3d 576, 578 (8th Cir. 1997).

Defendant's motion for a new trial may be granted only when necessary to avoid a miscarriage of justice. Rasmussen, 993 F.Supp. at 681 *citing* Ray v. Wal-Mart Stores, Inc., 120 F.3d 882, 885 (8th Cir. 1997). Motions for a new trial are not regarded with favor and should be granted only with great caution. Pacific Employers Ins. v. P.B. Hoidale Co., 804 F.Supp. 137, 140 (D. Kan. 1992); see also United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004) (citing this standard regarding new trials under comparable Federal Rule Criminal Procedure 33).

III.  **JUDGMENT AS A MATTER OF LAW IS NOT APPROPRIATE BECAUSE MR. HEATON ESTABLISHED A CAUSAL CONNECTION BETWEEN THE PROTECTED ACTIVITY AND THE ADVERSE EMPLOYMENT ACTIONS.**

In order to establish a prima facie case for retaliation pursuant to both federal and state law, Mr. Heaton must show that he took part in protected activities; that he was subjected to an adverse employment action and that there is a causal connection between the protected activity and the adverse employment action. Wallace v. DTG Operations, Inc., 442 F.3d 1117, 1119 (8th Cir. 2006) (internal citations omitted).  The plaintiff's burden at this stage is "not onerous and a minimal evidentiary showing will satisfy this burden of production." Id.

Once a plaintiff sets forth a prima facie case, the burden of production shifts to the employer to establish a legitimate, non-retaliatory reason for the adverse employment action to rebut the presumption of retaliation that arises.  Id. at 1120.  The plaintiff must then "demonstrate that the proffered reason was not the true reason for the employment decision."  Id. At this "final stage" of the analysis, the plaintiff's burden "merges with the ultimate burden of persuading the court that [he] has been the victim of intentional retaliation."  Id.

Mr. Heaton provided sufficient evidence to establish a causal connection between his protected activities and the adverse employment actions described to the jury.  While it is true that a temporal connection alone usually is insufficient to create a causal connection, Mr. Heaton provided sufficient evidence of a pattern of adverse actions which connects his April 28, 2003, complaint to Weitz's Human Resources to his demotion and forced lay-off November, 2003.

This pattern was illustrated by the following chronology, presented to the jury:

      a. April 28, 2003, Mr. Heaton reported Mr. Huber's derogatory comments.

      b. May 28, 2003, Mr. Henecke called Mr. Heaton a "spic" during a jurisdictional dispute, the same derogatory term used by Mr. Huber, and Mr. Henecke threatened to have Mr. Heaton fired. Mr. Henecke told Mr. Novy that he wanted him to fire Mr. Heaton, the only time Mr. Henecke has ever sought the firing of an employee during his entire career at Weitz. May 28, 2003, Mr. Novy actually fired Mr. Heaton even though Charles Zahorik, Mr. Heaton and Mr. Peterschmidt testified that jurisdictional disputes are a common occurrence but do not result in a termination. After revoking the termination because Mr. Heaton protested, Mr. Novy told Mr. Heaton he would not work on Mr. Henecke's projects again until he apologized.

      c. Mr. Heaton did not work on Mr. Henecke's projects until he apologized sometime in early August, 2003.

      d. Later that month, Mr. Novy and Mr. Henecke removed Mr. Heaton's foreman and another employee from the job site where they had been working and had worked in previous years, claiming security issues.[1] Mr. Heaton's foreman and other employee were not transferred to other work at Weitz, so Mr. Heaton's foreman (Mr. Peterschmidt) went to work at the Duane

---

[1] Defendant argues that it would be "nonsensical for Weitz to take retaliatory action on this project" as it was a "set bid" and that removing employees to "get back" at Mr. Heaton would be a "stretch of the imagination." (Defendant's Brief p. 11.) This argument is flawed as it presumes that all employers act rationally. As established by the citations to Kim, Snow, Jones and White just in this brief alone, **human** agents for employers sometimes act irrationally and against their economic interest, when they are angry or out to seek "revenge" against an employee who has made a complaint about discrimination, pay or any other protected classification.

Arnold Nuclear Power Plant, where he passed the security check. The loss of Mr. Heaton's foreman and employee put him behind schedule and disrupted Mr. Heaton's job performance, causing him anxiety and stress. Mr. Heaton testified that other superintendents became angry or upset over the removal of employees from their crew without their authorization, including an incident Mr. Heaton witnessed involving Mr. Huber.  Mr. Heaton wanted to quit, but Mr. Wolrab, on his own accord, worked out a compromise to keep Mr. Heaton on the job.

    e.  October-November, 2003, Mr. Heaton's job assignment, already let to him by Project Manager Dan Hackbarth, instead was given to ironworker superintendent Chris Bovero.

    f.  October-November, 2003, Mr. Novy told Mr. Heaton he would demote him four ranks to journeyman due to lack of work and stated "things are catching up with you"  and that if he did not take the demotion, there would be no work for him. Mr. Novy's comments "give rise to an inference" that Mr. Heaton's complaint and Mr. Novy's threatened demotion/lay-off "were not wholly unrelated." Jones v. Firestone Tire and Rubber, Co., 1990 U.S. Dist. Lexis 20097, at p. * 17-18 (N.D. Ala. 1990) (attached) (denying employer's summary judgment motion after finding material fact regarding the causal connection between employer's questioning if he would have any "problems" with employee who previously filed a civil rights complaint and subsequent demotion).

    g.  November 4, 2003, Mr. Heaton is forced to lay off when Mr. Novy told him there was no more work even though other superintendents

5

were doing "busy work".

Considering the totality of these circumstances and the pattern they create, it is clear that Weitz, over a period of approximately six (6) months, applied against Mr. Heaton the type of pressure that a reasonable employee would consider punitive or which could dissuade them from exercising their rights under federal and state law, culminating in his forced lay-off.  See, e.g., Burlington Northern and Santa Fe Rwy. Co. v. White, 2006 U.S. Lexis 4895, at p. * 26-27 (2006) (attached).

Prior to the April 28, 2003, complaint about Mr. Huber, Mr. Heaton had worked regularly without disciplinary problems, without jurisdictional disputes ending in termination and without the loss of his foreman or other crew members. Mr. Heaton had started as a journeyman in 2000, and in three (3) years, reached the level of superintendent.  However, his career took a "turn for the worst" from the time he complained to Weitz's Ms. DeVries in Human Resources about Mr. Huber.

In Snow v. Healthsouth Corp., 2001 U.S. Dist. Lexis 5534 at p. *53-54 (S.D. Ind. 2001) (attached), there was a three (3) month delay between the plaintiff's protected activity and her discharge.  The employer argued that this "delay" was long enough that the inference of retaliation could not "readily be drawn" and the plaintiff's prima facie case must fail.  Id.  However, like Mr. Heaton, Ms. Snow offered a "pattern of retaliatory acts that began shortly after the protected activity and culminated in the termination of her employment."  Id. at 54-55.  Ms. Snow argued, as does Mr. Heaton, that an inference of retaliation

can be drawn from "the temporal proximity *and* the continuing nature of the allegedly hostile acts." Id. at 55 *citing* Hunt-Golliday v. Metropolitan Water Reclamation District, 104 F3d 1004, 1015 (7th Cir. 1997) (holding six month period before firing was **not** too long to raise an inference of retaliation when the employee established a pattern of hostile actions that began almost immediately after her protected activity and culminated in a suspension) (emphasis supplied).

In Kim v. Nash Finch Co., 123 F.3d 1046, 1052-53 (8th Cir. 1997), the plaintiff filed a civil rights complaint after a failure to promote him. Over the course of the approximately eighteen (18) months, the employer excluded him from meetings, "papered" his file with reprimands and negative performance evaluations and required special re-training. The Eighth Circuit Court of Appeals affirmed a jury verdict for that plaintiff finding sufficient evidence "in the record as a whole" when drawing all reasonable inferences" in the plaintiff's favor, to support a causal connection between the filing of his civil rights complaint and the adverse employment actions, in part, because the plaintiff had received high performance evaluations and had no disciplinary problems prior to the filing of his discrimination charge. Id. at 1060-61.

Similarly, Mr. Heaton's "record as a whole" establishes a series of links between his report about Mr. Huber and Mr. Novy's option to demote four ranks or lay-off. This string of alleged discipline problems and work disruptions, which Mr. Heaton had not experienced prior to his report, just like the plaintiffs in Snow and Kim, is sufficient to establish the causal connection required in a Title VII and ICRA retaliation case. Like the plaintiffs in Snow and Kim, in a matter of just

7

months, a career that had taken three (3) years to build was over, and Mr. Heaton had to either accept that he was back to "square one" as a journeyman or he would not get any work.

Defendant argues that, because Mr. Heaton was the "least senior employee in management", the offer of demotion was "legitimate" in an alleged slow work period. First, the jury had the right to disbelieve there was a slow work period and second, the jury heard evidence from more than one witness that Defendant found work for other superintendents during slow work periods, but did not do so for Mr. Heaton. A reasonable jury could conclude that this failure to find suitable work for Mr. Heaton was retaliatory as the other superintendents for whom there was "busy work" had not filed complaints with Human Resources or any civil rights agency.

For example, Floyd Sauter testified that he had multiple job classifications with Defendant *prior* to being a superintendent. However, once he became a superintendent, Defendant located busy work for Mr. Sauter during slow periods or allowed him time off *as a superintendent.* Eventually, Mr. Novy created a position (that was supervisory in nature) for Mr. Sauter so as not to lose him due to an alleged slow down in iron work. Mr. Sauter never filed a complaint with Weitz Human Resources nor any civil rights agency. Again, this evidence is consistent with Mr. Heaton's claim that Defendant usually tries to keep superintendents working at Weitz, but did not do so in his case to punish him for his protected activity.

Defendant denied this and argued at trial and in its brief that Mike Curtis

8

was an example of an employee who "experienced changes in his job classification."  However, unlike Mr. Heaton, Mr. Curtis was never a superintendent.  Mr. Wolrab experienced a demotion from management to journeyman once, too.  However, he explained to the jury that the demotion was a *punishment* for him refusing to pull another ironworker off of a job.  This evidence support's Mr. Heaton's testimony that his four rank demotion was a punishment.

Defendant argues there was "no evidence of retaliatory conduct" linking the events from May 2003, to the November 2003, layoff.  (Defendant's Brief p. 10.)  This argument implies that Mr. Heaton must produce direct evidence of discrimination—such as Mr. Novy announcing that he was firing Mr. Heaton or removing Mr. Heaton's crew members from a job site because Mr. Heaton had complained about discrimination. Circumstantial evidence is sufficient to establish a causal connection between the protected activity and the adverse employment action.  See, e.g., Kim, 123 F.3d at 1061 (internal citations omitted) (holding "circumstantial evidence"…was "sufficient to establish the requisite causal connection between the protected activity and the adverse employment action.")

For all of these reasons and based on the evidence and testimony at trial, Mr. Heaton offered a sufficient basis for a reasonable jury to find a casual connection between Mr. Heaton's human resources complaint(s) and the demotion/layoff and failure to recall to work in either 2004 or after ironworker superintendent Bovero was terminated in January 2005.  Accordingly, the Court

should deny Defendant's renewed motion for judgment as a matter of law or motion for new trial on this issue.

IV.     MR. HEATON MITIGATED HIS DAMAGES.

The jury in this case did not award the total back pay requested by Mr. Heaton.[2]  In any event, a jury's award for lost wages need not be precise.  See Young v. Lukens Steel Co., 881 F.Supp. 962, 976 (E.D. Pa. 1994) and Jackson and Coker, Inc., v. Lynam, 840 F.Supp. 1040, 1052 (E.D. Pa. 1993) *aff'd* 31 F.3d 1172 (3d Cir. 1994).  Moreover, the Court instructed the jury on mitigation of damages at the close of the case.  (See final jury instructions.)  Defendant did not object to the particular mitigation instruction given. Many courts presume that juries act in accordance with the instructions given them and that juries act rationally.  See, e.g., Los Angeles v. Heller, 475 U.S. 796 (1986); Mycogen Plant Science, Inc. v. Monsanto Co., 61 F.Supp. 2d 199, 268 (D. Del. 1999); and United States v. Zauber, 857 F.2d 137, 154 (3d Cir. 1988) *cert. denied* 489 U.S. 1066 (1989) and *superseded by statute on other grounds*.

Mr. Heaton also testified that he could have been called back as a journeyman by the Defendant for as little as a 4 hour period and then could have been laid off again, pursuant to the collective bargaining agreement.  Also, the jury learned that a journeyman is the first to be laid off in a lack of work scenario under the union rules.  A reasonable jury could conclude that Mr. Heaton, if he had accepted the journeyman position, would have been laid off as a journeyman, resulting in Mr. Heaton losing his wages, health insurance and

---

[2] Mr. Heaton requested the jury award him $55,959.04, but the jury awarded him $47,537.44.

10

pension. Thus, a reasonable jury could conclude that, as Mr. Heaton argued, Mr. Novy's job offers to demote Mr. Heaton to journeyman were not protection from unemployment. A reasonable jury also could conclude that the employer's offers were not in good faith and were likely to result in Mr. Heaton being out of work in any event. The jury could have calculated this into the equation when determining the back pay award.

Further, there was no evidence that Mr. Heaton took any action that prevented him from obtaining journeyman or other work through the union hall. His business agent, Charles Zahorik, testified that Mr. Heaton did not tell him that he did not want journeyman or other iron work through another employer. Nor was there any evidence that Mr. Heaton was less than diligent in seeking comparable employment outside of the union hall.

Finally, in "reinstatement" cases, the Eighth Circuit Court of Appeals has found that when a plaintiff was offered a job that was *not* "substantially equivalent" to the one he either previously held or was seeking, there was no duty to accept it. See, e.g., Dickerson v. Deluxe Check Printers, Inc., 703 F.2d 276, 282-83 (1983) *citing* NLRB v. The Madison Courier, Inc., 472 F.2d 1307, 1320-21 (D.C. Cir. 1972) (finding that a "claimant" need not "seek employment which is not consonant with his particular skills, background and experience.") In Naylor v. Georgia Pacific, 875 F.Supp. 564, 581 (N.D. Iowa 1995), the court found that an offer of reinstatement tolls back pay only when it affords the claimant "virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status." The court cited EEOC v.

11

Accurate Mechanical Contractors, Inc., 863 F.Supp. 828, 835-36 (E.D. Wis. 1994), which held that where an employer offered work to a plaintiff that was not "identical" to the work illegally denied her, the offer was "unreasonable."

While Mr. Heaton admitted that Mr. Novy offered to find him work as a journeyman in November, 2003, and that he received a phone call from the union hall for work at Defendant in March, 2004, the positions offered were a 4 rank demotion (down from superintendent, past assistant superintendent, general foreman and foreman to journeyman).  Further, Mr. Heaton testified that he did not believe Defendant would keep him working as a journeyman and that the offer itself was retaliatory.  It would be a paradoxical result if Mr. Heaton could be penalized for refusing the work offered by Defendant under the mitigation doctrine but not be penalized under the reinstatement doctrine for rejecting the same work.

For these reasons, Mr. Heaton requests the Court deny Defendant's renewed motion for judgment as a matter of law and motion for new trial.

V.     THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE
       JURY'S EMOTIONAL DISTRESS AWARD.

Mr. Heaton offered specific testimony about his feelings of worthlessness, depression and anxiety regarding the pattern of retaliation, demotion and ultimately, the lay off he experienced in Defendant's employ.  He described disconnecting from his family and friends.  He also described a fear that, if this type of discriminatory and retaliatory conduct could happen at such a big employer in Iowa, it could happen anywhere.  Finally, he described seeking counseling, taking anti-depressant and anti-anxiety medication for his feelings of

sadness and worry. Mr. Heaton explained to the jury that these medications had unpleasant side effects such as insomnia, sweating and gastrointestinal upset. This testimony was uncontroverted.

"An award of damages for emotional distress must be supported by competent evidence of genuine injury." Kucia v. Southeast Ark. Cmty. Action Corp., 284 F.3d 944, 947-48 (8th Cir. 2002) *citing* Forshee v. Waterloo Industries, 178 F.3d 527, 531 (8th Cir. 1999). A "plaintiff's own testimony, along with the circumstances of a particular case, *can* suffice to sustain the plaintiff's burden in this regard." Id. *citing* Kim, 123 F.3d at 1065 (emphasis supplied). Mr. Heaton need not provide medical or other expert evidence to prove his emotional distress. Kim v. Nash Finch Co., 123 F.3d 1046, 1065 (8th Cir. 1997).

In Kim, the plaintiff was awarded $100,000 in emotional distress damages based on his testimony, along with testimony from his wife and son, that Mr. Kim suffered from anxiety, sleeplessness, stress, depression, headaches and other symptoms. Id. at 1065. This is the same type of testimony Mr. Heaton provided himself, and which the Defendant did not controvert on cross examination. The Eighth Circuit Court of Appeals upheld the award in Kim, citing approvingly to cases where emotional distress damages ranging from $40,000 to $150,000 were affirmed. Id. at 1067 (internal citations omitted). Mr. Heaton's award fell well within this range and was supported by his own testimony.

Defendant cited Forshee, 178 F.3d at 531, for the proposition that "the plaintiff's evidence of emotional distress was based entirely upon her own testimony and did not describe the kind of severe emotional distress that

warranted an award of damages." (See Defendant's brief, p. 13.) However, that quotation failed to fully describe the circumstances in the Forshee case. In Kucia, 284 F.3d at 947-48, the court compared Forshee to Mathieu v. Gopher News Co., 273 F.3d 769, 783 (8th Cir. 2001). The Kucia court found that in Forshee, the plaintiff "testified that after being terminated she went home and sat and cried about it the rest of the day, and that she was forced to take a job at lower pay and work two jobs. Aside from the loss of the job itself, little else occurred. There was no medical treatment, and no corroborating evidence. " Id. at 531 (internal quotations omitted.) Also, in Forshee, the plaintiff found a new job almost immediately. Kucia, 284 F.3d 947-48.

However, in contrast, the plaintiff's testimony in Mathieu was also the only evidence supporting an award for $165,000 for emotional distress. The award was affirmed because the plaintiff had lost a job of 34 years, was forced to reduce his standard of living, and had become depressed. Kucia, 284 F.3d at 948. The Kucia court went on to find that, while the Kucia case was "not exactly like Forshee or Mathieu," the plaintiff established the kind of mental distress and disruption of life like that in Mathieu, and affirmed an award of $50,000 for compensation for emotional distress. Id. at 948.

Likewise, here, Mr. Heaton established the kind of mental distress and disruption more like Mathieu and Kucia than Forshee. He explained that he was depressed, was humiliated, and could not find work even through the union hall to support his family. The physical and emotional manifestation of Mr. Heaton's feelings lasted for a long period of time, including to the date of trial. Mr. Heaton

14

sought counseling and medications for his anxiety and depression. Accordingly, Mr. Heaton's case is more like <u>Mathieu</u> and <u>Kucia</u> than <u>Foreshee</u>, and as such the Defendant's renewed motion for judgment as a matter of law, or motion for new trial should be denied with respect to Mr. Heaton's emotional distress damages.

VI. THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S PUNITIVE DAMAGE AWARD.

"In the judicial system, compensatory and punitive damages, although usually awarded at the same time by the same decisionmaker, serve different purposes. Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution." <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 416 (2003). "Punitive damages may be awarded if a defendant [retaliates] with malice or with reckless indifference to the federally protected rights of an aggrieved individual." <u>See</u>, 42 U.S.C. § 1981a(b)(1) and <u>Kolstad v. American Dental Ass'n</u>, 527 U.S. 526 (1999).

Defendant argues that "the facts clearly do not support the award of punitive damages." (Defendant's brief, p. 17.) But Defendant's recitation of the facts fails to note the following: (1) Mr. Heaton testified that when he first reported Noel Huber's conduct, he told Human Resource Manager Chantry DeVries that he was worried about Mr. Novy's reaction because he thought that Mr. Novy was "friends" with Mr. Huber based on comments Mr. Novy had made and based on the fact that Mr. Novy had "protected" Mr. Huber previously, but

15

Ms. DeVries turned the issue over to Mr. Novy anyway; (2) Ms. DeVries did not investigate Mr. Heaton's second (or subsequent) complaints about retaliation, and again turned the matters over to Mr. Novy even though she testified that if someone was complaining about a manager, her "normal" procedure would be to drive to the location and investigate herself.  She did not do that for Mr. Heaton; (3) Mr. Novy and Mr. Henecke systematically attempted to discredit Mr. Heaton or make him appear as if he was a disciplinary problem and attempted to either terminate or force him to quit before the "demotion or lay off" ultimatum in October/November 2003; (4) there was testimony from Mr. Heaton, Floyd Sauter, Dennis Wolrab, Charles Zahorik and Kameron Peterschmidt that Defendant usually found work for superintendents during slow work periods.  However, Defendant did not find such work for Mr. Heaton.  Such evidence is consistent with Mr. Novy's comment when he told Mr. Heaton that he could demote four ranks or "there will be no work for you" and "things are catching up with you." These comments establish knowledge and intentionality of illegal conduct on the part of Mr. Novy, the Defendant's Vice President; and (5) both Mr. Novy and Ms. DeVries testified that they knew Defendant's policies and federal and state law prohibited retaliation against an employee who engaged in protected activities.

In Kim, 123 F.3d at 1066, the company argued that there was insufficient evidence to support a punitive damage award, arguing that "at most, there was only circumstantial evidence of discrimination consisting of inconsistent explanations for the allocation of scarce employment opportunity." The Eighth Circuit Court of Appeals disagreed, stating that:

> "a reasonable jury could have found that [defendant] acted with reckless indifference to Kim's federally protected rights. There was evidence that [defendant] knew what constituted unlawful employment practices. There was also evidence that [defendant] systematically retaliated against Kim for filing an employment discrimination charge and attempted to discredit him by 'papering' his personnel file…[and the acts were] undertaken by supervisors or management."

Id. at 1066 *citing* Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 575 (8th Cir. 1997) (finding "the requisite level of recklessness or outrageousness [required to support punitive damages] can be inferred from management's participation in the discriminatory conduct.")  See also Rowe v. Hussmann Corp., 281 F.3d 775, 784 (8th Cir. 2004) (finding where management's participating in the [retaliatory] conduct or where employee's repeated complaints to supervisors fall on deaf ears permit an inference of recklessness.)

The same factors that the Eighth Circuit Court of Appeals relied upon in Kim and Rowe are applicable here.  As stated above, the Defendant's employees knew what constituted unlawful employment practices; there was evidence that Mr. Novy and Mr. Henecke systematically retaliated against Mr. Heaton for complaining about Mr. Huber and attempted to "discredit" him and such acts were undertaken by managers above Mr. Heaton.  Here, Mr. Heaton's repeated complaints to Ms. DeVries after his demotion/layoff "fell on deaf ears" as Ms. DeVries did not investigate Mr. Heaton's evidence of retaliation, but investigated only Mr. Novy's "evidence" that he did not retaliate against Mr. Heaton.

In reviewing the factors set forth by the United States Supreme Court to determine the "reasonableness of a punitive damages award", the "degree of reprehensibility of the defendant's conduct" is the most important indicium.

Campbell, 538 U.S. at 419 *citing* BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996). In analyzing the "reprehensibility" of a defendant's conduct, the courts should consider whether the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. Campbell, 538 U.S. at 419.

      Here, Mr. Heaton established his managers exhibited a reckless disregard for his *economic* safety. Mr. Heaton had "financial vulnerability" as he was the primary income provider for his wife and children.  The evidence also showed that there was a pattern of retaliation and the harm was the result of an intent to punish Mr. Heaton for complaining about another manager.  Accordingly, the "degree" of reprehensibility was high and the jury arguably could have awarded this reasonable sum to inform the Defendant that its conduct was "reprehensible."

      Furthermore, the punitive damage award was not out of line with the compensatory damage award of $137,070.44.  Also, the award does not exceed the damage caps set forth in 42 U.S.C. § 1981a(b)(3). Finally, the award of $25,000 in punitive damages was roughly *one* percent of the Defendant's "gross profits" for one year (as established by Mr. Novy's testimony).  For all of these reasons, the Court should deny Defendant's renewed motion for judgment as a matter of law or motion for new trial on punitive damages.

VII.   CONCLUSION

WHEREFORE, for the reasons stated above, Plaintiff Edward D. Heaton respectfully requests the Court deny Defendant's renewed motion for judgment as a matter of law or motion for new trial.

```
                              /s/Amy L. Reasner_____
                              WILFORD H. STONE,     AT0007699
                              AMY L. REASNER,       AT0006390
                                  of
                              LYNCH DALLAS, P.C.
                              526 Second Avenue SE
                              P.O. Box 2457
                              Cedar Rapids, Iowa 52406-2457
                              Telephone 319.365.9101
                              Facsimile 319.866.9721
                              E-Mail:  wstone@lynchdallas.com
                                       areasner@lynchdallas.com

                              ATTORNEYS FOR PLAINTIFF
```

## **CERTIFICATE OF SERVICE**

I certify that on the 8th day of January 2007, I served a copy of the foregoing upon the following person(s) by electronic notice pursuant to Federal Rule of Civil Procedure 5(b):

Gene R. LaSuer
Sharon K. Malheiro
DAVIS, BROWN, KOHEN, SHORS & ROBERTS, P.C.
666 Walnut St., Ste. 2500
Des Moines, IA 50309-3993


                              /s/Amy L. Reasner_____