**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

EDWARD D. HEATON,

    Plaintiff,

vs.

THE WEITZ COMPANY, INC.,

    Defendant.

No. 05-CV-102-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.   *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

II.   *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *2*

III.   *ATTORNEYS' FEES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
   *A.*   *Parties' Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
   *B.*   *Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    *1.*   *Duplicative fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *2.*   *Vague requests* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
    *3.*   *Heaton's abandonment of claims* . . . . . . . . . . . . . . . . . . *12*
     *a.*   *Relatedness* . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
     *b.*   *Level of success* . . . . . . . . . . . . . . . . . . . . . . . . *14*
    *4.*   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

IV.   *BILL OF COSTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

V.   *INTEREST* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*
   *A.*   *Pre-Judgment Interest* . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*
   *B.*   *Post-Judgment Interest* . . . . . . . . . . . . . . . . . . . . . . . . . . . *21*

VI.   *DISPOSITION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *21*

# I.  INTRODUCTION

The matters before the court are Plaintiff Edward D. Heaton's Motion for Attorneys['] Fees and Pre[-]judgment Interest ("Motion") (docket no. 55), First Amended Motion for Attorneys' Fees and Costs ("First Amended Motion") (docket no. 63) and Second Amended Motion for Attorneys' Fees and Costs ("Second Amended Motion") (docket no. 69) (hereinafter collectively "Motions").  Also before the court is the Amended Bill of Costs (docket no. 54).[1]

# II.  RELEVANT PROCEDURAL BACKGROUND

On June 21, 2005, Plaintiff Edward D. Heaton ("Heaton") filed a Complaint and Jury Demand ("Complaint") against Defendant the Weitz Company, Inc. ("Weitz").

On June 30, 2006, Weitz filed a summary judgment motion.  On November 14, 2006, the court granted summary judgment to Weitz on Heaton's blacklisting claim and his federal and state claims of national origin discrimination.  The court denied summary judgment to Weitz on Heaton's claims of retaliation in violation of federal and state laws.

On November 29, 2006, a jury found in favor of Heaton on his retaliation claims. The jury awarded Heaton $47,537.44 in lost wages, $4,800.00 in lost health insurance benefits, $11,413.00 in lost pension benefits and $73,320.00 for emotional distress. Therefore, the compensatory damages totaled $137,070.44.  In addition, the jury awarded Heaton $25,000.00 in punitive damages.

On December 11, 2006, Heaton filed the Amended Bill of Costs.  On the same date, Heaton filed the Motion requesting attorneys' fees in the amount of $89,113.00 for work completed through that date.  On December 22, 2006, Weitz filed a resistance ("Resistance").  On January 8, 2007, Heaton filed a reply ("Reply").

---

[1]  Plaintiff filed a Bill of Costs (docket no. 53).  The only apparent difference between the Bill of Costs and the Amended Bill of Costs is that the former is missing an authorizing signature.  Therefore, the court will rely on the signed Amended Bill of Costs in this Order.

On December 22, 2006, Weitz filed a motion for judgment as a matter of law or new trial ("New Trial Motion"). On January 8, 2007, Heaton resisted.

On January 8, 2007, Heaton filed the First Amended Motion and requested an additional $4,549.00 in attorneys' fees and $65.70 in costs for work completed after entry of judgment. On January 16, 2007, Weitz filed a response ("Response to First Amended Motion"). In the Response to First Amended Motion, Weitz does not object to the First Amended Motion.

On May 2, 2007, with the court's permission, Weitz filed a supplemental brief in support of its New Trial Motion. On the same date, Heaton filed a resistance to the supplemental brief.

On May 2, 2007, Heaton filed the Second Amended Motion and requested an additional $1,279.00 in attorneys' fees and $7.80 in costs for work completed in resisting Weitz's supplemental brief in support of its New Trial Motion.

On July 13, 2007, the court entered an order denying the New Trial Motion.

Finding the Motions and the Amended Bill of Costs to be fully submitted and ready for decision, the court turns to consider them.

### III. ATTORNEYS' FEES

#### A. Parties' Arguments

In the Motions, Heaton argues that he is entitled to $89,113.00 in attorneys' fees for work completed through December 11, 2006; $4,549.00 in attorneys' fees for work completed after the judgment was entered; and $1,279.00 in attorneys' fees for work relating to his resistance to Weitz's supplemental brief. In total, Heaton is requesting $94,941.00 in attorneys' fees.

Heaton provided a detailed statement and itemization of the fees sought. Heaton calculated the attorneys' fees based on the hourly rate of $225.00 for shareholder Wilford Stone ("Stone"), $175.00 per hour for shareholders Scott McLeod ("McLeod") and

3

Matthew Nagle ("Nagle"), $155.00 per hour for associate Amy Reasner ("Reasner"), $125.00 per hour for associate Jason Craig ("Craig"), $100.00 per hour for law clerk Rebecca Feiereisen ("Feiereisen") and $90.00 per hour for legal assistant Michelle Barnes ("Barnes"). *See* Motion (docket no. 55), at Exs. A & B; First Amended Motion (docket no. 63), at Ex. C; and Second Amended Motion (docket no. 69), at Ex. E. Such totals are set forth in Table 1 below:

**Table 1**

| Name of Attorney, Law Clerk, or Legal Assistant | Hours Claimed | Rate Claimed | Proposed Lodestar |
|---|---|---|---|
| Reasner | 350.40 | $155.00/hr | $54,312.00 |
| Stone | 152.20 | $225.00/hr | $34,245.00 |
| Feiereisen | 29.70 | $100.00/hr | $2,970.00 |
| Barnes | 17.10 | $90.00/hr | $1,539.00 |
| Craig | 12.20 | $125.00/hr | $1,525.00 |
| Nagle | 1.0 | $175.00/hr | $175.00 |
| McLeod | 1.0 | $175.00/hr | $175.00 |
| **TOTALS** | 563.60 | - | **$94,941.00** |

In its Resistance, Weitz makes three arguments. First, Weitz argues that the amount of attorneys' fees should be reduced because Heaton's billing statements indicate that an unreasonable amount of time was expended on the case, much of it through duplicative efforts by his attorneys. Specifically, Weitz contends that there is considerable overlap during the periods of time where Heaton's attorneys drafted the initial demand letter, drafted the Complaint and during discovery. Weitz contends that Heaton is not entitled to recover attorneys' fees for time that his attorneys billed for client meetings, preparation for meetings and time they spent meeting with each other. Weitz seeks to reduce the

4

requested amount of fees by $21,123.00, and it itemizes which fees it believes are duplicative. *See* Resistance (docket no. 59), at Ex. 1.

Second, Weitz argues that Heaton's attorney's fees should be reduced because the fees requested are vague and Heaton engaged in "block billing."[2] Weitz alleges that the time that Stone spent "reviewing the file" and "discuss[ing] case status" with Reasner is vague and must result in a reduction of the attorneys' fees awarded. Weitz also argues that Stone made entries for communications with "Attorney Petrzelka," but there is no such attorney of record in the case. It also complains that fees cannot be awarded for Stone's entries regarding "SODP," because Weitz does not understand what SODP means.

Finally, Weitz argues that the attorney fee award should be reduced because Heaton did not succeed on all of his claims, namely his state and federal discrimination claims and his blacklisting claim, which were dismissed by the court in the summary judgment order. Weitz argues that the total award should be reduced, because Heaton "conceded his claims for national origin discrimination and for [blacklisting]" in his response to the motion for summary judgment. Resistance (docket no. 59-2), at 7. Weitz argues that "attorneys fees were incurred and billed to Weitz for time spent on issues that were subsequently withdrawn by [Heaton]." *Id.*

In its Reply, Heaton retorts that the fees are not duplicative and that the distinct contributions of each lawyer should be compensated. Heaton argues that it was reasonable for Stone to mentor Reasner and review her work, because he is a civil litigator with over

---

[2]  "Block billing" is "'the time keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)).

5

fifteen years of experience who holds a master's degree in labor relations, whereas Reasner is a relatively inexperienced attorney with no expertise in the subject matter of Heaton's case.

Heaton responds to Weitz's second contention by arguing that, even if Stone's entries are considered "block billing," such billing is appropriate and Stone provided adequate details in his descriptions of his work and billed in a fashion that was nearly identical to the amount of detail used by Weitz's attorney Gene R. LaSeur ("LaSeur"). Heaton explains that Attorney Matthew J. Petrzelka is the attorney for the ironworkers involved in the case. Moreover, Heaton explains that the acronym "SODP" refers to the Scheduling Order and Discovery Plan in this case. Heaton notes that Stone worked 143 hours as of December 11, 2006, as compared to LaSeur's 130 hours billed as of November 30, 2006. *See* First Amended Motion (docket no. 62), at 5 & Ex. A. As such, Heaton argues that Weitz's request to reduce Stone's fees by 64% is unreasonable.

Finally, Heaton responds that he should be awarded all of the attorneys' fees requested, because the same research and evidence was used for the abandoned and prevailing claims. Heaton argues that his retaliation claim was a "significant issue" and, as such, he is a prevailing party who can seek fees for claims that are related to the retaliation claim. Reply (docket no. 62), at 6. Heaton argues that each of the initial claims were interrelated and arose out of the same facts and circumstances.

### B.  *Legal Analysis*

The "American Rule" of attorney's fees is "that each party in a lawsuit ordinarily shall bear its own attorney[s'] fees unless there is express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975)). Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq.*, provides such authorization. *See* 42 U.S.C. § 2000e-5k ("[T]he court, in its discretion, may allow the prevailing party . . . a

6

reasonable attorney's fee (including expert fees) as part of the costs . . . ."). Chapter 216 of the Iowa Civil Rights Act ("ICRA") also "provides for recovery by a successful claimant of 'actual damages, court costs and reasonable attorney fees.'" *Hamer v. Iowa Civil Rights Comm'n*, 472 N.W.2d 259, 266 (Iowa 1991) (quoting Iowa Code § 601A.15(8)(a)(8) (1983), which is currently codified at Iowa Code § 216.15(8)(a)(8) (2007)); *see also Miller v. Davenport Cmty. Sch. Dist.*, Nos. 1999-588, 9-849 & 99-0650, 2000 WL 210292, *7 (Iowa Ct. App. Feb. 23, 2000) (unpublished) ("[Title VII] and the [ICRA], Iowa Code [§] 216.15(8)(a)(8)[,] provide for an award of attorney fees and costs to the prevailing party.").

"[P]laintiffs may be considered prevailing parties for attorney[s'] fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (quotations and footnote omitted).[3]

> [A] court may award attorneys' fees to a prevailing Title VII plaintiff in "all but very unusual circumstances," *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975), . . . and a prevailing Title VII plaintiff is entitled to attorneys' fees "unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (per curiam) . . . ."

*Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*, 26 F.3d 842, 848 (8th Cir. 1994).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This is commonly known as the "lodestar." *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2002) ("The starting point . . . is the 'lodestar,'

---

[3] Weitz does not dispute that Heaton is a "prevailing party" with regard to the retaliation claims.

7

which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." (quotation omitted)). The party seeking attorneys' fees bears the burden "to provide evidence of the hours worked and the rate claimed." *Wheeler v. Mo. Hwy. & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003).

The lodestar is "presumed to be the reasonable fee to which counsel is entitled." *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988) (quotations omitted). It does not, however, "end the inquiry." *Hensley*, 461 U.S. at 433. "There remain other considerations that may lead the district court to adjust the fee upward or downward . . . ." *Id*. After calculating the lodestar figure, the court

> also should exclude from this initial fee calculation hours that were not reasonably expended. Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . [, because] [h]ours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority.

*Hensley,* 461 U.S. at 434 (citations, quotations and emphasis omitted). In deciding whether the amount of hours and the hourly rate are reasonable, the Supreme Court evaluates twelve different factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

8

*Id.* at 430 n.3. "The most critical factor in the fixing of a reasonable fee is the overall success obtained." *Jenkins ex rel. Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997) (en banc).

### 1. *Duplicative fees*

"A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J. ex rel. L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). However, representation by multiple attorneys is not grounds for automatic reduction in hours. *See id.* ("We are not aware of any cases . . . which hold that a court may reduce attorneys' fees *solely* on the basis that multiple attorneys helped to secure a prevailing party's success." (emphasis in original)). *Compare Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 359 (8th Cir. 1997) (finding that second trial attorney's billings were not duplicative of first trial attorney's billings because the second trial attorney was an active participant at trial, and determining that the award of fees for the work of the second attorney was not an abuse of discretion); *with ACLU v. Barnes*, 168 F.3d 423, 430-32 (11th Cir. 1999) (finding the attorneys' fees request excessive, duplicative and warranting a reduction where the attorneys spent 147.88 hours drafting a 179-paragraph complaint that was based largely on preexisting materials and where five attorneys sought reimbursement for drafting three briefs).

Based on the billing statements provided by Heaton, the hours billed on Heaton's case were not unreasonably duplicative or excessive. The lead attorney representing Heaton was Reasner, who had between four and five years experience as a practitioner in civil litigation. It was not unreasonable for her to collaborate with more experienced attorneys or for them to review her work. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, No. CIV 02-4009-KES, 2006 WL 1889163, at *5 (D.S.D. July 7, 2006) (unpublished) (Schreier, J.) (noting that a less-experienced attorney's conferences with

co-counsel were "expected" because of the more experienced attorney's "role in the litigation as a supervising attorney with unparalleled experience in reproductive rights law" and noting that it was reasonable for the less-experienced attorneys to "tap[] the wealth of legal and strategic knowledge"). As Heaton points out, Weitz's attorneys also billed for conferences and collaboration sessions among its attorneys. *See generally* Reply (docket no. 62-1), at 2 & Ex. A. Here, the time Heaton's attorneys spent meeting with each other about the case was approximately twenty-one hours. The court finds this amount of time reasonable, especially in light of the fact that the attorneys "trimmed" the bill on the front end by not double billing each of these meetings. *See Gautreax v. Chi. Hous. Auth.*, No. 05-3578, 2007 WL 1814632, at *11 (7th Cir. June 26, 2007) (determining that the district court did not abuse its discretion "in concluding that the time spent on intra-team communications was compensable . . . [w]here [it found] that the appropriate trimming took place to bring the billed hours within a reasonable range"). For example, on May 19, 2005, and May 20, 2005, Stone billed 0.80 hours and 1.10 hours, respectively, for "office conference[s]" with Reasner, but Reasner did not bill the same. Motion (docket no. 55-2), at Ex. A, p. 3.

The time billed by Reasner and Stone while working together is reasonable, because it reflects the customary practice of multiple-lawyer litigation. *See Kurowski v. Krajewski,* 848 F.2d 767, 776 (7th Cir. 1988) (Easterbrook, J.) ("The use of two (or more) lawyers . . . may well reduce the total expenditures by taking advantage of the division of labor."). Reasner, who drafted most of the documents and tried the case, billed 350.40 of the 563.60 total hours. Reasner reasonably tapped into Stone's extensive experience as a civil litigator and his knowledge of unions. Therefore, the court finds that the hours billed were reasonable. *See also* Motion (docket no. 55), at Mark L. Zaiger's Affidavit in Support of Plaintiff's Motion for Attorneys' Fees, ¶ 9 (stating that he "believe[s] that total fees of

$87,000 are in a range that is fair and reasonable" for this type of case). Were Heaton to pay his counsel for their services, he could reasonably be billed for everything contained in the billing statements that Heaton has provided to the court.

### 2. *Vague requests*

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. Billing entries must not be so vague as to "make it impossible to attribute a particular attorney's specific time to a distinct issue or claim." *H.J. Inc.*, 925 F.2d at 260; *see also Miller v. Woodharbor Molding & Millworks, Inc.*, 174 F.3d 948, 949 (8th Cir. 1999) (finding that the plaintiff's attorneys "failed to consistently identify the subject matter of the work performed and repeatedly failed to specify the substance or content of billed tasks" (quotations omitted)).

Although Reasner's billing entries are far more detailed than Stone's, the court finds that Stone's billing entries provide adequate descriptions of his work. The billing statements provided by Heaton contain the date, the name of the attorney, a brief description of the activity and the time spent performing each activity or task in six-minute increments. Although some entries contain more general terminology, such as "reviewing the file," when such entries are viewed in the context of the entire billing statement, they are not vague. The entries surrounding such statements clarify what the "reviewing file" entries are referencing, such as the demand letter and settlement issues. *See Lenihan v. City of N.Y.*, 640 F. Supp. 822, 826 (S.D.N.Y. 1986) (determining that entries such as "reviewing files," "general preparation" and "preparation for trial" were not unclear when

viewed in light of the "context in which these entries occur"). The billing statements by the professionals involved in Heaton's case are more than sufficient and specific to identify the subject matter of the time expended. *See Hensley*, 461 U.S. at 437 n.12 (stating that plaintiff's counsel "is not required to record in great detail how each minute of his time was expended").

Therefore, the court shall not reduce the amount of attorneys' fees requested due to vagueness or block billing.

### 3. *Heaton's abandonment of claims*

The Supreme Court has indicated that two questions must be asked to determine if a plaintiff is entitled to attorneys' fees when the plaintiff has not prevailed on all claims. *See Hensley*, 461 U.S. at 434. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* If the plaintiff brings a lawsuit with claims that are "based on different facts and legal theories," the "work on one claim will be unrelated to his work on another claim." *Id.* at 434-35; *see also Wal-Mart Stores v. Barton*, 223 F.3d 770, 772 (8th Cir. 2000) ("When a plaintiff has prevailed on some, but not all, of his or her claims, the court should consider the potential impact of partial success on the fee award . . . ."). The Supreme Court has held:

> If . . . a plaintiff achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith . . . Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney[s'] fee[s] reduced simply

12

> because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* at 436, 440; *see also Hunt v. State of Mo., Dep't of Corr.*, 297 F.3d 735, 744-45 (8th Cir. 2002) (affirming district court's award of attorney's fees to plaintiffs who were successful on their Title VII retaliation claims but unsuccessful on their sexual harassment claims, and stating that the "district court carefully reviewed the bills submitted and appropriately concluded that the hours for which reimbursement was requested were reasonable in relation to the results obtained" (quotation omitted)); *see also Barton*, 223 F.3d at 773 (affirming attorneys' fee award of $106,832.60 where the plaintiff's attorneys billed thirty percent more than the awarded amount, where the plaintiff was not successful on five of her claims that were related to the successful claim that was "at the heart of her case" and where the plaintiff had been awarded $25,000.00 in actual damages). When making this determination, the Supreme Court reminds the court that, "[b]ecause damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986).

### a.    Relatedness

The court must first ask whether Heaton failed to prevail on claims that were unrelated to the claims on which he succeeded, that is, the retaliation claims. *Hensley*, 461 U.S. at 434. There is no universal test for determining relatedness. *See Barton*, 223 F.3d at 770 ("'There is no precise rule or formula for making these determinations.'" (quoting *Arneson v. Callahan*, 128 F.3d 1243, 1249 (8th Cir. 1997), in turn quoting *Hensley*, 461 U.S. at 436)). "Claims are related, and hence deserving of compensation, if they 'involve a common core of facts' or are 'based on related legal theories.'" *Emery v. Hunt*, 272

13

F.3d 1042, 1046 (8th Cir. 2001) (quoting *Hensley*, 461 U.S. at 435). Prevailing plaintiffs cannot collect attorney fees on "time spent on unsuccessful claims that were 'distinct in all respects from his successful claims.'" *Id.* (quoting *Hensley*, 461 U.S. at 440). If claims are related, the "lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

In the instant case, Heaton was successful in his federal and state retaliation claims. Heaton abandoned his state and federal discrimination claims and his blacklisting claim in his response to Weitz's motion for summary judgment. All of the claims arose out of the facts that (1) a Weitz supervisor made racially-charged and derogatory comments to Heaton, (2) Heaton reported the incident to Weitz's human resources department, (3) Heaton was given the choice between demotion or layoff and (4) after Heaton was laid off, he was not called back to work as a Weitz superintendent or in another supervisory capacity. The abandoned discrimination and blacklisting claims arose out of the same facts that were presented by Heaton to the jury on his successful retaliation claims. The unsuccessful claims, therefore, were not entirely distinct and separate from the claims of retaliation because they "'involv[ed] a common core of facts.'" *Emery*, 272 F.3d at 1046 (quoting *Hensley*, 461 U.S. at 435). Heaton's attorneys "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim by claim basis." *Hensley*, 461 U.S. at 435. Therefore, because the evidence and work on the various claims was intertwined and necessary to all of the claims, the court concludes that the successful and unsuccessful claims were sufficiently related.

### b.  Level of success

Heaton was ultimately successful on two of his five claims. Although Heaton was unsuccessful on his discrimination and blacklisting claims, the jury returned a verdict of $137,070.44 in compensatory damages and $25,000.00 in punitive damages. This is a

14

substantial judgment against Weitz, which the court considers "significant." *See Barton*, 223 F.3d at 773 (finding $25,000.00 judgment in a Title VII sexual harassment case on one of the plaintiff's six original claims to be a "substantial judgment" and a "significant" success). Therefore, Heaton ultimately had a high level of success, but the court shall reduce the attorneys' fee award due to the fact that Heaton abandoned three of his claims in his resistance to the motion for summary judgment.

The court has considered the lodestar amount in light of all other applicable factors, including the level of success obtained, and finds that a 10% reduction from the lodestar is appropriate. Heaton wholly abandoned three of his five original claims at the summary judgment stage of the case. The court finds that the requested amount of attorneys' fees, that is, a total attorneys' fee award of $94,941.00, Table 1, *supra*, shall be reduced by 10% (or $9,494.10) to $85,446.90. *See Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002) (affirming a 15% reduction in loadstar for lack of complete success on all claims); *Polacco v. Curators of Univ. of Mo.*, 37 F.3d 366, 370 (8th Cir. 1994) (affirming reduction of unreported percentage in loadstar for lack of complete success on all claims).

### 4. Conclusion

An attorneys' fee award of $85,446.90 is reasonable and warranted in this Title VII and ICRA case where the jury awarded Heaton a total of $162,070.44 in compensatory and punitive damages due to Weitz's unlawful retaliation. *See Shrader v. OMC Aluminum Boat Group, Inc.*, 128 F.3d 1218, 1222 (8th Cir. 1997) (affirming a $44,137.50 attorneys' fee award in an Americans with Disabilities Act case where the plaintiff was rehired and obtained a $3,000.00 judgment against the employer); *see also Williams v. KETV*, 36 F. App'x 874, 875-76 (8th Cir. 2002) (finding that an attorneys' fee award of $38,040.93 was reasonable where the plaintiff only obtained a $1000.00 emotional distress award in a Title VII case).

15

## IV. BILL OF COSTS

Heaton seeks to have the costs listed in Table 2 taxed against Weitz:

**Table 2**

| Explanation of Cost | Amended Bill of Costs | First Amended Motion | Second Amended Motion |
|---|---|---|---|
| Fees of the Clerk | $250.00 | | |
| Fees for service of summons and subpoena | $65.00 | | |
| Fees of the court reporter | $1,584.90 | | |
| Fees for witnesses | $160.00 | | |
| Fees for exemplification and copies of papers | $857.76 | $5.70 | $7.80 |
| Other costs - long distance telephone calls to defense counsel, postage and Lexis fees | $495.44 | $60.00 | |
| **TOTAL COSTS REQUESTED:** | | | $3,486.60 |

Amended Bill of Costs (docket no. 54); First Amended Motion (docket no. 63), at Ex. D; and Second Amended Motion (docket no. 69), at Ex. F. For the court reporter fees, Heaton lists the transcripts of eleven witnesses: "Zahorik, Novy, DeVries, Heneck[e], Johnson, Wolrab" for $1,180.45, "Peterschmidt, J. Wright, B. Wright" for $310.60, Huber for $81.75 and "Sauter (trial)" for $12.10. Amended Bill of Costs (docket no. 54), at 3.

Weitz only contests Heaton's request for $1,584.90 for the court reporter fees. Weitz objects to that particular request arguing that it should not have to pay for the depositions of Ben Wright ("Ben Wright"), Jeff Wright ("Jeff Wright") and Noel Huber

16

("Huber"), because Heaton did not call such witnesses during the trial. It argues that their depositions were not "necessary" to the case.

Heaton responds that the depositions of Ben Wright, Jeff Wright and Huber were necessary to resist Weitz's motion for summary judgment, and the deponents were listed as potential trial witnesses in Heaton's initial disclosures.

Federal Rule of Civil Procedure 54 states that, "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs . . . shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." Fed. R. Civ. P. 54(d)(1). Exactly which costs will be awarded is a matter left to the discretion of the district court. *Poe v. John Deere*, 695 F.2d 1103, 1108-09 (8th Cir. 1982). The court "may tax as costs . . . [the] [f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920(2).

> The determination of necessity must be made in light of the facts known at the time of the deposition, without regard to intervening developments that later render the deposition unneeded for further use. In other words, the underlying inquiry is whether the depositions reasonably seemed necessary at the time they were taken.

*Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir. 1997) (internal citations and quotations omitted). Depositions taken purely for investigative reasons will not be deemed "necessary." *Zotos*, 121 F.3d at 363; *see also Smith v. Tenet Healthsys. SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) ("Even if a deposition is not introduced at trial, a district court has discretion to award costs if the deposition was necessarily obtained for use in a case and was not purely investigative." (quotations omitted)); *see also Koppinger v. Cullen-Schiltz & Assocs.*, 513 F.2d 901, 911 (8th Cir. 1975) (affirming the district court's tax of costs for depositions that were not used in trial and quoting the district court as stating: "Under the circumstances which existed in this case where defendants were

17

reluctant to stipulate as to any material fact and extensive discovery was taken by all parties, the court feels that the deposition costs were proper.").

Here, Heaton listed Jeff Wright, Ben Wright and Huber as potential trial witnesses in his initial disclosures on August 26, 2005. Reply (docket no. 62-5), at 1, 2 & 6. Out of the twenty potential witnesses, Huber is listed third, and the Wrights are listed fifth and sixth. *Id.* at ¶¶ 3, 5 & 6. In his initial disclosure, Heaton articulated the necessity for the three witnesses in question. *Id.* Moreover, Heaton used the deposition transcripts of Jeff Wright, Ben Wright and Huber in support of his resistance to the motion for summary judgment. *See* Plaintiff Edward D. Heaton's Appendix in Support of his Statement of Additional Material Facts (docket no. 20-9), at 81-84 (Huber's Deposition), 122-125 (Ben Wright's Deposition) and 126-32 (Jeff Wright's Deposition). For these reasons, the court finds that, at the time Heaton took the depositions of Jeff Wright, Ben Wright and Huber, their depositions were reasonably necessary to the case. The court shall tax costs in the amount of $1,584.90 for court reporter fees. *See* Table 2, *supra*.

The court shall tax costs on Weitz in the total amount of $3,486.60.

## V.  INTEREST

### A.  Pre-Judgment Interest

Finally, in his Motion, Heaton seeks "pre[-]judgment compounding interest at the prevailing market rate determined by the [c]ourt to be fair, from November 3, 2003, to the date of trial." Motion (docket no. 55), at 4. He "seeks pre[-]judgment interest on his back pay and benefits." *Id.* at 3, ¶ 10. Heaton argues that the "prevailing market rate should apply from the date of the lost wages and benefits accrued (November 5, 2003), compounded to the date of trial . . . ." *id.*, but Heaton neither seeks an exact amount or suggests what the appropriate pre-judgment interest rate should be. Weitz does not object to Heaton's request for compounded pre-judgment interest.

Case 1:05-cv-00102-LRR   Document 71   Filed 08/08/07   Page 18 of 22

Title VII does not mention an award of pre-judgment interest. *See generally* 42 U.S.C. § 2000e, *et seq.* However, courts have generally awarded pre-judgment interest in Title VII suits, because it is considered an "element of complete compensation." *Loeffler v. Frank*, 486 U.S. 549, 557 (1988); *see id.* at 558 ("Title VII authorizes interest awards as a nominal incident of suits against private parties . . . ."). *But see Van Horn v. Specialized Support Servs., Inc.*, 269 F. Supp. 2d 1064, 1076 (S.D. Iowa 2003) (determining that a prevailing plaintiff was not entitled to pre-judgment interest on her Title VII or ICRA retaliation claims). "Title VII authorizes pre[-]judgment interest as part of a backpay remedy in suits against private employers." *Loeffler*, 486 U.S. at 557. An award of "'pre[-]judgment interest serves at least two purposes: (1) it helps compensate plaintiffs for the true cost of money damages they have incurred, (2) where liability and the amount of damages are fairly certain, it promotes settlement and deters an attempt to benefit unfairly from the inherent delays of litigation.'" *EEOC v. Rath Packing Co.*, 787 F.2d 318, 333 (8th Cir. 1986) (quoting *Gen. Facilities v. Nat'l Marine Serv.*, 664 F.2d 672, 674 (8th Cir. 1981)). In determining whether an award of pre-judgment interest is appropriate, the court should balance Title VII's purpose of making the plaintiff whole "against countervailing considerations." *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 671 (8th Cir. 1992).

Iowa statutory law provides that interest shall be allowed on all money judgments due on judgments and decrees of courts, and it "shall accrue from the date of the commencement of the action." Iowa Code § 535.3 (2007); *see also Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 896 (Iowa 1990) (citing Iowa Code § 535.3). Interest awarded under Iowa Code § 535.3 is generally mandatory. *Barske v. Rockwell Int'l Corp.*, 514 N.W.2d 917, 925 (Iowa 1994). The pre-judgment interest includes interest on compensatory damages and applies to awards under the ICRA. *See Flockhart v. Iowa Beef Processors, Inc.*, 192 F. Supp. 2d 947, 978 (N.D. Iowa 2001) (Melloy, J.) (awarding

19

pre-judgment interest for backpay and emotional distress damages where plaintiff prevailed on her sexual harassment claims under Title VII and the ICRA. "[U]nder Iowa Code chapter 601A, an action is not commenced until it is filed in the district court." *Landals*, 454 N.W.2d at 896.

Because interest awarded under Iowa Code § 535.3 is generally mandatory, the court shall award pre-judgment interest pursuant to Iowa law. The court shall award pre-judgment interest on the $137,070.44 compensatory damages award between the date the Complaint was filed, that is, June 21, 2005, and the date judgment was entered, that is, November 30, 2006. *Accord Flockhart*, 192 F. Supp. 2d at 978 (awarding pre-judgment interest "from the date of the commencement of [the] action to the date of the entry of judgment"). The court shall not award pre-judgment interest on the punitive damages award. *See In re IBP Confidential Business Documents Litig.*, 755 F.2d 1300, 1320 (8th Cir. 1985) (applying Iowa law and reversing a district court judgment that had allowed pre-judgment interest on punitive damages under Iowa Code § 535.3, and stating that "punitive damages do not accrue . . . until they are awarded in a judgment"). Therefore, insofar as Heaton seeks pre-judgment interest beginning on November 5, 2003, *see* Motion (docket no. 55), at 3, ¶ 10, the Motion shall be denied.

To determine the rate of interest, the court again looks to Iowa Code § 535.3, which provides, in pertinent part, that the interest shall be awarded "at a rate calculated according to [Iowa Code §] 668.13." Iowa Code § 535.3(1). The Iowa Supreme Court has determined that Iowa Code § 535.3 "allows only simple interest," rather than compound interest, "on judgments and decrees of court." *Landals*, 454 N.W.2d at 897. Therefore, insofar as Heaton seeks "compounding interest," *see* Motion (docket no. 55), at 3, the Motion shall be denied.

The court shall award the pre-judgment interest at the statutory rate set forth in Iowa Code § 668.13(3). That section provides, in part: "Interest shall be calculated as of the

20

date of judgment at a rate equal to the one-year treasury constant maturity published by the federal reserve in the H15 report settled immediately prior to the date of the judgment plus two percent. . . ." Iowa Code § 668.13(3). The applicable interest rate on the date "immediately prior to the date of the judgment" was 5.01 percent. *See* Iowa's Post Judgment Interest Rate Table, *available at* http://www.judicial.state.ia.us/Administration/Interest_on_Judgments/ (last visited Aug. 7, 2007). An additional two percent makes the applicable pre-judgment interest rate 7.01 percent.

### B. Post-Judgment Interest

Post-judgment interest is allowed on any money judgment in a federal civil case. 28 U.S.C. § 1961(a). Section 1961(a) provides, in pertinent part, that the post-judgment interest rate is "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). The post-judgment interest rate immediately prior to November 30, 2006, the date of entry of the final judgment, was 5.01 percent, the rate set for the week ending November 24, 2006. *See* Federal Reserve Statistical Release, *available at* http://www.federalreserve.gov/releases/h15, at November 27, 2006 (last visited Aug. 2, 2007). Pursuant to § 1961(a), the court shall award pre-judgment interest at the rate of 5.01 percent, and it shall accrue on the entire award, including punitive damages.

### VI. DISPOSITION

For the foregoing reasons, the court hereby **ORDERS**:

(1) Heaton's Motion (docket no. 55), First Amended Motion (docket no. 63) and Second Amended Motion are **GRANTED** in part and **DENIED** in part;

(2) Heaton's Bill of Costs (docket no. 54) is **GRANTED**;

(3) Weitz is directed to pay attorneys' fees in the amount of $85,446.90;

21

(4)     Weitz is direct to pay costs in the amount of $3,486.60;

(5)     Pre-judgment interest shall be calculated at the rate of 7.01 percent on the $137,070.44 compensatory damages award for the period of June 21, 2005, to November 30, 2006; and

(6)     Post-judgment interest shall be calculated at the rate of 5.01 percent on the total award of $162,070.44, pursuant to 28 U.S.C. § 1961(a), for the period beginning on December 1, 2006, through the date that the judgment is paid in full.

**IT IS SO ORDERED.**

**DATED** this 8th day of August, 2007.


_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA